Nicholas BACHUR, Sr.,
Plaintiff–Appellee,

v.

DEMOCRATIC NATIONAL PARTY; Democratic National Committee; Maryland State Democratic Party; Marie M. Garber, in her official capacity as Administrator of the Maryland State Administrative Board of Election Laws; Defendants–Appellants,

The National Organization for Women (Now), The Fund for the Feminist Majority and the National Women's Political Caucus (NWPC); The New York State Democratic Committee (NYSDC); The West Virginia Democratic Party, Defendants–Amici Curiae.

Nicholas BACHUR, Sr.,
Plaintiff–Appellee,

v.

MARYLAND STATE DEMOCRATIC PARTY; Defendant–Appellant,

The National Organization for Women (Now), The Fund for the Feminist Majority and the National Women's Political Caucus (NWPC); The New York State Democratic Committee (NYSDC); The West Virginia Democratic Party, Defendants–Amici Curiae,

and

The Democratic National Party; Democratic National Committee; Marie M. Garber, in her official capacity as Administrator of the Maryland State Administrative Board of Election Laws, Defendants.

Nicholas BACHUR, Sr.,
Plaintiff–Appellee,

v.

Marie M. GARBER, in her official capacity as Administrator of the Maryland State Administrative Board of Election Laws; Defendant–Appellant,

The National Organization for Women (Now), The Fund for the Feminist Majority and the National Women's Political Caucus (NWPC); The New York State Democratic Committee (NYSDC);

The West Virginia Democratic Party, Defendants–Amici Curiae,

and

Democratic National Party; Democratic National Committee; Maryland State Democratic Party, Defendants.

Nos. 87–3872(L), 87–3875 and 87–3876.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1987.

Decided Dec. 29, 1987.

George Albert Nilson (Lee Baylin, Stephen H. Kaufman, Piper & Marbury on brief), John T. Willis (Blades & Rosenfeld, J. Joseph Curran, Jr., Jack Schwartz, Baltimore, Md., Linda Lamone, Office of the Atty. Gen., Annapolis, Md., Joseph A. Rieser, Jr., Reed, Smith, Shaw & McClay, Washington, D.C., on brief), for appellants.

G. Stewart Webb, Jr. (Kathleen M. McDonald, Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellee.

(Lena S. Zezulin, Thomas J. Hart, Thomas Hart & Associates, Washington, D.C., on brief), for amici curiae National Organization for Women, The Fund For the Feminist Majority, and National Women's Political Caucus.

(Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., on brief), for amicus curiae New York State Democratic Committee.

(Steven F. White, Goodwin & Goodwin, Charleston, W. Va., on brief), for amicus curiae West Virginia Democratic Party.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

In a suit by Nicholas R. Bachur, Sr., a registered Democrat, the district court ruled that Rule 6C of the Delegate Selection Rules for the 1984 Democratic National Convention as implemented in Maryland infringed Bachur's fundamental right to vote in an election for delegates to the national convention to select the Party's candidates for President and Vice–President. As implemented, Rule 6C required Bachur to allocate his votes on the basis of the sex of the candidates for delegate. He was permitted to vote for not more than four female and four male delegates. The district court enjoined defendants from implementing or applying Rule 6C or any other rule which would require voters to allocate their votes for candidates for delegates on the basis of sex, awarded Bachur $1.00 in damages and, pursuant to 42 U.S.C. § 1988, attorneys' fees in an amount yet to be determined.

Defendants appeal and we reverse. We rule that while Bachur has standing to sue, his constitutional claim is lacking in merit and does not present a justiciable issue.

I.

The facts in the case are not disputed. They were found more elaborately by the district court and need not be as fully stated here. *See Bachur v. Democratic National Party,* 666 F.Supp. 763 (D.Md.1987). We repeat only the salient ones.

In recent years membership in the Democratic Party of the United States (National Party) has been approximately equally divided between the sexes. However, even by the 1960's, the participation of women in the leadership of the party, as candidates for public office and as delegates to the national convention has not mirrored the percentage of female party-members. Since at least 1968, the National Party has made repeated efforts to ensure that future conventions of the National Party would have women delegates in numbers more closely approximating the proportion of women registered as Democratic voters and in the population as a whole.

The initial efforts to accomplish this objective were less than satisfactory until the 1976 national convention adopted the so-called Equal Division Rule requiring that the delegations from each state contain an equal number of men and women delegates and alternates. The 1980 convention

proved the efficacy of the rule, and so the charter of the National Party was amended to embody the direction that membership on all committees, commissions and like bodies of the National Party and state parties shall be equally divided between men and women. To implement this amendment to the charter, the Democratic National Committee included in the delegate selection rules for its 1984 national convention Rule 6C, which requires each state delegate selection plan to "provide for equal division between delegate men and delegate women and alternate men and alternate women."

Pursuant to the directive of the National Party, the Maryland Democratic Party (State Party) after conducting hearings open to all party members adopted a plan for the popular election of male and female delegates from each of Maryland's eight Congressional districts. Direct election of delegates had been resorted to only twice before with the result of disproportionately low selection of female delegates compared to the percentage of female membership in the State Party.

Plaintiff voted in 1984 in the Third Congressional District by paper absentee ballot prepared by the State Administrator of Election Laws in accordance with the State Party's certification. Ann.Code of Md., Art. 33, § 12–1(b)(1) and 12–2(b)(1) and (2). Plaintiff had the right to select the national presidential candidate of his choice, i.e. to express his preference, and he had the right to vote for four male and four female delegates of his choice. For each of the national presidential candidates, except LaRouche and McGovern, there were at least four female and four male candidates for delegate pledged to that contender and twenty-four additional male candidates and fifteen additional female candidates for delegate were uncommitted. LaRouche had only three candidates for delegate of each sex pledged to him, and McGovern had only three female candidates for delegate

pledged to him. Under Maryland law, the results of the direct primary presidential election are advisory unless the national party rules require otherwise, and delegates, committed or uncommitted, "shall in all good conscience reflect the sentiments of those who elected them" unless party rules require otherwise. Ann.Code of Md., Art. 33, § 12–3. Nothing in the charter of the National Party or its By-Laws contained in the record before us spells out any more concretely the voting obligations of committed or uncommitted delegates or the possible binding effect of the outcome of the direct presidential preference primary. It does appear, however, that each convention is empowered to adopt rules governing those matters for that convention.

Bachur does not disclose which presidential candidate he supported nor his delegate selection. On deposition he declined to say whether he cast his votes for committed or uncommitted delegates. He admitted that, aside from the names appearing on the paper ballot, he did not know the vast majority of candidates for delegates, and he had no information about their views prior to the election.

In granting judgment for Bachur, the district court considered and ruled on a number of issues arising from defendants' defense of the action. First it ruled that Bachur had standing to sue on his own behalf and also on behalf of candidates for delegates, because his right to vote for candidates for delegates was restricted and because the voting restrictions limited the ability of a candidate to be elected as a delegate. Next it ruled that the action was not moot, even though the presidential primary election had been held before the case was decided, because of the likelihood that future elections of delegates would be conducted under the same or similar gender limitations.[1] The issue was therefore capable of repetition yet evading review. In a third basic ruling, the district court

---

1. Before us the parties do not raise the possibility of mootness. While we heard argument on the eve of the preparation of voting machines and absentee ballots for the March, 1988 presidential primary, and while the rules for voting in that primary are somewhat different from the ones previously applicable, we were told that with respect to gender qualification, the new rules embodied the principle at issue in this case.

concluded that state action was present because Maryland provided the machinery for electing delegates, so that Bachur could assert claims founded on the Fourteenth Amendment. Treating as separate and distinct issues the questions of whether Bachur's claim of denial of constitutional right was justiciable and meritorious, the district court decided the issue of whether Bachur's right to vote for delegates of his choice was unconstitutionally abridged was one that was proper for the district court to decide, and that the Equal Division Rule did violate Bachur's fundamental right to vote by restricting his ability to allocate his votes and that it also violated the equal protection clause guarantee of candidates for delegates because the National Party's attempt to remedy past discrimination against women by gender classification on the ballot "is not substantially related to a sufficiently important interest" to warrant the restriction.

Before us the only issues raised are the questions whether Bachur has standing to sue, whether his claim is justiciable and whether it is meritorious. We discuss them in the order named.

## II.

■ We are in agreement with the district court that Bachur has standing to sue on his own behalf. We see no need to decide if he has standing to sue on behalf of candidates for delegate.

In order to assert any claim against defendants, Bachur "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). There is no real dispute that Bachur has standing to invoke the power of a federal court on his own behalf. He did vote in the 1984 Democratic primary in Maryland, which required him to vote for no more than four candidates of each sex. He claims that he was injured because he could not vote for eight candidates based on whatever criteria, aside from gender, that he personally deemed appropriate. This barrier to his

free exercise of franchise directly resulted from the Equal Division Rule and its implementation. *See, e.g., Ripon Society v. National Republican party*, 525 F.2d 567 (D.C.Cir.1975) (in banc), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) (giving standing to individuals who claimed that their votes were diluted by the malapportionment of delegates pursuant to "Victory Bonus" plans put in place by the National party to reward successful local parties).

It is true that Bachur has refused to disclose either the particular presidential candidate or delegates he would have supported but for the Equal Division Rule. It is also true that no candidate for delegate has joined him as a co-plaintiff in bringing this suit. Thus, his standing to invoke the power of a federal court on behalf of the candidates for delegate is debatable and, if it exists, it must rest on more general grounds.

While several cases conclude that it is difficult to sever the respective rights of voters and candidates, and that in analyzing restrictions placed on candidates, courts must evaluate their impact upon voters, *see, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 786–88, 103 S.Ct. 1564, 1568–69, 75 L.Ed.2d 547 (1983); *Bullock v. Carter*, 405 U.S. 134, 143–44, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972), this is not that type of case because, as we have said, no candidate for delegate has joined in the suit. We do not deem it necessary to decide if a voter, in his capacity as sole plaintiff, has standing to raise the rights of the candidate, because unquestionably Bachur has standing to raise whatever rights he possesses and that is enough to present us with the merits of this controversy.

## III.

■ In disagreement with the district court but in agreement with *Ripon Society v. National Republican Party*, 525 F.2d at 578, we do not think that the questions of justiciability and the merits may, in this case, be approached and decided as separate and distinct issues. Rather we deem them intertwined largely because we think

that in order to determine whether the gender voting restriction here was permissible action on the part of the National Party and the State Party in the exercise of their First Amendment rights, and thus not amenable to judicial intervention, we must first determine whether Bachur's fundamental right to vote has been infringed, and if so, if his right is outweighed by the rights of the National and State Parties. Since Bachur, in our view, does not have a meritorious cause of action on his own behalf, we decline to intervene in the internal structure of either the State Party or National Party. This is not to say however that we lay down a principle of universal application, i.e., that a challenge to a restriction on voting on candidates for delegate is never justiciable. We decide only that the constitutional challenge to this restriction in this case is not justiciable because it is lacking in merit. We do not foreclose the possibility of a different result with respect to a different restriction in a different case.

Since *Cousins v. Wigoda,* 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975), it has been settled that a political party has a right of political association protected by the First and Fourteenth Amendments, and that right of association carries with it the right to determine the party's own criteria for selection of delegates to its national convention. While it may be conceded that this right is not boundless, the Supreme Court has not precisely defined its limits, or, stated conversely, spelled out the extent to which a state or a court may properly interfere with or limit the exercise of the right. Although not having decided the question of the outer reach of a political party's right to control its delegate selection or the precise extent to which a court may intervene in the process, the Court has repeatedly admonished the Courts that "[j]udicial intervention in this area has traditionally been approached with great caution and restraint." *O'Brien v. Brown,* 409 U.S. 1, 4, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1 (1972). Later, in *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975), in holding that Illinois state law governing the qualifications of convention delegates could not prevail over a national party's conflicting rules as to qualifications and eligibility of convention delegates, the Court was careful to leave open "to what extent principles of the political question doctrine counsel against judicial intervention." *Id.* at 483 n. 4, 95 S.Ct. at 545 n. 4.

Even more recently in *Democratic Party of the United States v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 123–24, 101 S.Ct. 1010, 1019–20, 67 L.Ed.2d 82 (1981), the Court held that a Wisconsin statute requiring an open presidential primary and providing that delegates who were elected were bound to vote according to the results of the primary could not bind a national party having a rule restricting the selection of delegates to party members. The Court stressed that the merits of the dispute over the selection of delegates was not a question for the courts to mediate. Rather the party had a First Amendment right to determine the makeup of a state's delegation to the national convention, and "as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational." (footnote eliminated) *Id.* at 124, 101 S.Ct. at 1020.

■ Bachur alleges that his fundamental right to vote has been abridged. We must assay the extent of that right in order to decide if it was unconstitutionally abridged. In this case Bachur does not claim that he was foreclosed from voting for a candidate of his choice; he seeks the right to vote for a delegate of his choice. The right to vote in elections for national office is a fundamental one. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). This right includes any preliminary election integrally related to elections for national office. *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). But Bachur's vote for delegates is some steps removed from a vote for an actual candidate for public office. Delegates for practical purposes constitute the National Party— they make its rules, adopt its platform, provide for its governance, as well as nomi-

nate candidates. However, standing between the individual voter and the eventual nomination of a candidate may be numerous party rules and procedures so that the will of the majority of the electorate expressing a presidential preference and the selection of delegates may be only partially translated into the actual nomination. A finding that Bachur has a right to participate in a popular primary election does not foreclose party limits on the effective weight of his participation, or mandate that the popular ballot is to be wholly determinative of the outcome of the nomination process. Indeed in many states, delegates to the national convention are selected by means other than a primary election, so that many of Bachur's counterparts in some states other than Maryland have no direct voice in the selection of delegates. The question we must decide is whether the private associational rights of the party to give shape to its goals through the equal participation of women at the national convention impermissibly limit Bachur's (and the candidates') participation in the primary process.

The First Amendment associational rights of a political party have been deemed to outweigh various state interests in protecting the rights of that state's voters. Thus, in *Cousins, supra,* the State of Illinois was denied the right to fix the qualifications of its delegates to the 1972 Democratic National Convention. In *Democratic Party of the United States v. Wisconsin, supra,* the State of Wisconsin was denied the right to require its delegates to be chosen in an open state preference primary in which the result of the primary was binding on voting by the delegates. Most recently in *Tashjian v. Republican Party of Connecticut,* 479 U.S. ——, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986), the right of the Republican Party of Connecticut to permit unaffiliated voters to vote in its primary elections for federal and statewide offices was sustained on the ground that state law which restricted voting in primaries to party members impermissibly burdened the First and Fourteenth Amendment rights of both the party and its members.

These cases contain a common thread in that a state tried to regulate some aspect of delegate selection in order to protect an asserted state interest, or a party sought to broaden its electoral base in contravention of a state statute. The case before us is limited to Bachur's right to vote. Nonetheless the efforts of the states to regulate delegate selection have been repeatedly rebuffed, and we may therefore derive instruction on the scope and sanctity of a political party's associational rights.

When we balance the broad, encompassing First and Fourteenth Amendment protection enjoyed by the National Party and the State Party against the limited restriction on Bachur's right to vote for delegates, we can only conclude that Rule 6C does not unconstitutionally infringe on Bachur's right to vote. Our conclusion in this respect is reinforced by *Tashjian* and the history and purpose of the Equal Division Rule. The Equal Division Rule manifestly has a rational purpose. *See Ripon Society,* 525 F.2d at 586–87 ("representational scheme and each of its elements [must only] rationally advance some legitimate interest of the party in winning elections or otherwise achieving its political goals."). Although gender membership in the National and State Parties was approximately equal, female participation in party affairs and particularly national conventions was notably deficient. Means to stimulate greater female participation were ineffective until the Equal Division rule was formulated and adopted. The use of affirmative action on the part of a political party to broaden its base was approved in *Tashjian.* There, in an effort to broaden public participation in party affairs, the Republican party of Connecticut, in contravention of state election statutes, adopted a rule to permit voters not affiliated with any political party to vote in Republican primaries for state and federal offices. The validity of the rule was upheld and the Court took occasion to say "[t]he Party's attempt to broaden the base of public participation in and support for its activities is conduct undeniably central to the exercise of the right of association." 479 U.S. at ——, 107 S.Ct. at

549, 93 L.Ed.2d at 523. *See also Democratic Party of the United States v. Wisconsin,* 450 U.S. at 122, 101 S.Ct. at 1019. We see no principled difference between opening a primary election to unaffiliated voters and a gender limitation on eligible candidates as a means to broaden public participation in party affairs, particularly from a segment of the party that historically has been grossly underrepresented.

Thus we do not think that the adoption and implementation of Rule 6C exceeded the associational rights of the National Party and the State Party nor do we think that such action impermissibly restricted Bachur's right to vote. Being nonmeritorious, we view Bachur's claim as not warranting judicial intervention.[2]

REVERSED.

---

2. Bachur also contends that the judgment of the district court is sustainable on state constitutional grounds. This argument was not considered by the district court, and we do not deem it properly before us.