544 So.2d 1310 (1989)
Ronny J. RICARD
v.
STATE of Louisiana, Jim Brown, et al.
No. 88-CA-2299.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
*1311 Mack E. Barham, Robert E. Arceneaux, Gail N. Wise, Barham & Associates, New Orleans, for Louisiana Democratic Party.
William J. Guste, Jr., Jesse J. Marks, Jeffery M. Lynch, Staff Atty., Louisiana Dept. of Justice, New Orleans, for State of La., Jim Brown, Secretary of State, Jerry Fowler, Com'r of Elections, and Edwin Lombard, Clerk of Criminal Dist. Court.
Henry P. Julien, Jr., New Orleans, for Ronny J. Ricard.
Before KLEES, BYRNES and WARD, JJ.
WARD, Judge.
Ronny J. Ricard appeals the Trial Court ruling maintaining defendants' exceptions of no cause and no right of action, dismissing his suit seeking a declaratory judgment that La.R.S. 18:443.1 of the Louisiana Election Code is unconstitutional.
In an attempt to insure greater participation by women in the functioning and decision making process of the National Democratic Party, the party amended its charter by enacting the Equal Division Rule which required state democratic parties to adopt a plan for selection of national committee members that would "provide for equal division between delegate men and delegate women and alternate men and alternate women." The Louisiana Legislature amended La.R.S. 18:443 by Act 119 of 1987 to require the same scheme for elections to the State Central Committee of recognized political parties in Louisiana.
On August 28, 1987 Ronny J. Ricard, qualified to enter the race for office of "Member, Democratic State Central Committee, District 96, Office B". Upon qualifying, Ricard learned La.R.S. 18:443.1 provided that in all State Central Committee districts, Office A was reserved for female candidates while Office B was reserved for male candidates. As a consequence, male incumbents from Office A qualified for election for Office B, where Ricard was the incumbent. Ricard lost his bid for re-election on November 21, 1987, placing third in a field of four candidates.
Thereafter, Ricard filed a Petition for a Declaratory Judgment and Injunctive Relief naming as defendants the State of Louisiana, the Secretary of State, the Commissioner of Elections and the Clerk of Orleans Criminal District Court (collectively, the "State"). The petition sought a ruling *1312 declaring Act 119 of the 1987 Regular Session of the Legislature as it amended La. R.S. 18:443 et seq. unconstitutional and the election null and void. Ricard also requested a temporary restraining order and both preliminary and permanent injunctions to prevent certification of the election results. Claiming an interest in this litigation, the Louisiana Democratic Party intervened, aligning itself with the State.
When the Trial Court dismissed Ricard's request for a temporary restraining order, the Secretary of State certified the election results. Later by consent judgment, Ricard dismissed his demand for injunctive relief as moot, leaving the only remaining issue Ricard's demand for a declaratory judgment. Responding to that demand, the State and Intervenor filed exceptions of no cause and no right of action which were maintained by the Trial Court.
The exception of no right of action questions the plaintiff's standing or interest to bring suit. La.C.C.P. art. 927(5); League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980). Stated another way, the exception raises the question of whether a remedy afforded by law can be invoked by a particular plaintiff. It relates specifically to the person of the plaintiff. Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212 (La.App. 1st Cir.1977).
The exception of no cause of action tests whether a plaintiff's allegations entitle him to any relief whatsoever. In deciding this exception, all well pleaded allegations of the petition must be taken as true. Any doubt as to the sufficiency of the petition must be resolved in favor of plaintiff. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975).
In a suit for a declaratory judgment the right and the cause of action are broadly defined by La.C.C.P. art. 1872, which reads in pertinent part:
A person ... whose rights, status, or other legal relations are affected by a statute, ... may have determined any question of construction or validity arising under the ... statute, ... and obtain a declaration of rights, status, or other legal relations thereunder.
The codal articles authorizing declaratory judgment are declared remedial and should be liberally construed and administered. La.C.C.P. Art. 1881; Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964). Nevertheless, there is no right or cause of action when there is no justiciable controversy. Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971). Additionally, the Trial Court is given discretion to refuse to render a declaratory judgment, and appellate courts should not reverse unless there is an abuse of discretion. Associated Indemnity Corp. v. Louisiana Industries Prestressed Corp., 259 So.2d 89 (La.1972).
In Abbott, 249 So.2d 908 at 918 the Supreme Court defined "justiciable controversy":
A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relation of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
In this case there is an existing actual and substantial dispute, not one that is hypothetical or abstract, and the parties have real adverse interest. Resolution of this issue would terminate the controversy.
While everyone whose rights are affected by a statute may not have an interest that would give standing to sue for a declaratory judgment, we believe Ricard has a legally protected, immediate, and tangible interest in resolution of the question of the validity of the statute. Ricard held the Office of State Committeeman, sought reelection, and will again seek election. In Democratic State Central Committee elections his right to run for either *1313 office A or B and his right to vote for any candidate, male or female, has been restricted by La.R.S. 18:443.1. We find Ricard's interest similar to the plaintiff in Guidry v. Roberts, 335 So.2d 438 (La.1976) where our Supreme Court held Guidry, as a past campaign contributor, had an interest and therefore standing to challenge a statute regulating contributions and expenditures in campaigns for public office to be held in the future. The declaratory judgment statute is to be liberally construed, and we conclude the Trial Court erred by finding either no right or no cause of action and reverse that ruling.
Although the Trial Court did not rule on the merits of the constitutional issue raised by Ricard's suit, the question presented is a question of law alone. Therefore, having a complete record before us and briefs that address the merits, we will decide the issue.
Ricard contends Act 119 of 1987, particularly the part now designated as La. R.S. 18:443.1, is unconstitutional because it is an arbitrary, capricious and unreasonable law which discriminates upon the basis of sex. Furthermore, he maintains that "because this law interferes with a fundamental constitutional civil and political right ... strict scrutiny is required[,] ... compelling the state rather than the complainant [to] carry a heavy burden of justification...."
We, nonetheless hold that the State has met its burden to show that La.R.S. 18:443.1 is not unconstitutional.
Since Cousins v. Wigoda, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975) the Courts have held that a political party enjoys a constitutionally protected right of political association under the First and Fourteenth Amendments, and that right of association carries with it the right to establish criteria for national convention delegate selection. For the same reasons, a state political party enjoys those same rights.
Act 119 of 1987 was enacted by the Legislature with the approval of the Louisiana Democratic Party, which as a matter of fact has intervened, asserting an interest in upholding the statute. The Charter of the Democratic National Party requires the State Democratic Party to take affirmative action to ensure inclusion of females in the party hierarchy. The statute incorporates the National Democratic Party policy and State Democratic Party rules and thus reflects a state political party's choice among alternative ways of determining the composition of the party's state central committee. When a state statute conflicts with either national or state political party rules which exercise that right of association, the U.S. Supreme Court has held the party rules must prevail. Democratic Party of United States v. Wisconsin ex rel. LaFollette, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981); Tashjian v. Republican Party of Conn., 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).
This is not the situation here, and the inquiry is not whether a statute that requires equal division but conflicts with party rules is unconstitutional. Rather the question is whether the statute, incorporating Democratic party policy and rules, unconstitutionally infringes on Ricard's rights to seek office in the Democratic party or to vote for a candiate of his choice for that office. The statute, applicable to elections for state central committee, is analogous to the Democratic National Party's Rule 6(c) applicable to selection of delegates to the national convention. In Bachur v. Democratic National Party, 836 F.2d 837 (4th Cir.1987) the Court upheld Rule 6(c).
When we balance the broad, encompassing First and Fourteenth Amendment protection enjoyed by the National Party and the State Party against the limited restriction on Bachur's right to vote for delegates, we can only conclude that Rule 6C does not unconstitutionally infringe on Bachur's right to vote. Our conclusion in this respect is reinforced by Tashjian and the history and purpose of the Equal Division Rule. The Equal Division Rule manifestly has a rational purpose. See Ripon Society [v. National Republican Party], 525 F.2d [567] at 586-87 [ (D.C.Cir.1975) ] ("representational scheme and each of its elements [must *1314 only] rationally advance some legitimate interest of the party in winning elections or otherwise achieving its political goals.") Although gender membership in the National and State Parties was approximately equal, female participation in party affairs and particularly national conventions was notably deficient. Means to stimulate greater female participation were ineffective until the Equal Division Rule was formulated and adopted. The use of affirmative action on the part of a political party to broaden its base was approved in Tashjian. There, in an effort to broaden public participation in party affairs, the Republican party of Connecticut, in contravention of state election statutes, adopted a rule to permit voters not affiliated with any political party to vote in Republican primaries for state and federal offices. The validity of the rule was upheld and the Court took occasion to say "[t]he Party's attempt to broaden the base of public participation in and support for its activities is conduct undeniably central to the exercise of the right of association." 479 U.S. at 212, 107 S.Ct. at 549, 93 L.Ed.2d at 523. See also Democratic Party of the United States v. Wisconsin, 450 U.S. at 122, 101 S.Ct. at 1019. We see no principled difference between opening a primary election to unaffiliated voters and a gender limitation on eligible candidates as a means to broaden public participation in party affairs, particularly from a segment of the party that historically has been grossly underrepresented. Thus we do no think that the adoption and implementation of Rule 6C exceeded the associational rights of the National Party and the State Party nor do we think that such action impermissibly restricted Bachur's right to vote. Being nonmeritorious, we view Bachur's claim as not warranting judicial intervention.
For the same reasons we hold La.R.S. 18:443.1, as applied to Ricard, does not unconstitutionally infringe on Ricard's right to seek election to a State Democratic Party political office or his right to vote for candidates of his choice in elections for Democratic State Central Committee.
We reverse the Trial Court's ruling that there is no right and no cause of action, but we render judgment in Appellees' favor, dismissing Appellant's request for declaratory judgment. Each party is to bear its own costs.
REVERSED AND RENDERED.