657 So.2d 622 (1995)
Henry MOUTON
v.
DEPARTMENT OF WILDLIFE & FISHERIES FOR the STATE OF LOUISIANA.
No. 95 CA 0101.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
Rehearing Denied July 25, 1995.
*623 William Bass, Lafayette, for plaintiff/appelleeHenry Mouton.
Charles Ellis, New Orleans, for plaintiffs/intervenors appelleesLa. Ass'n of Coastal Anglers, La. Environmental Action Network.
Karl Koch, Aidan C. Reynolds, Baton Rouge, for defendants/appellantsSamuel Nunez, La. Senate, La. House of Representatives.
Michael Landrum, Baton Rouge, for defendant/appelleeLa. Dept. of Wildlife and Fisheries.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for mandamus.

BACKGROUND
Prior to September, 1992, the Louisiana Wildlife and Fisheries Commission adopted LAC Title 76, Part VII, Chapter 3, § 341, commonly known as the "Spotted Sea Trout *624 Management Plan" (the Trout Plan),[1] which, among other things, prohibited the weekend commercial taking of spotted sea trout within the waters of the State of Louisiana. Subsequent to the promulgation of this regulation, during the 1992 Regular Legislative Session, the legislature adopted House Concurrent Resolution No. 211, which purported to nullify that portion of the Trout Plan which prohibited the weekend commercial taking of spotted sea trout.[2] On September 17, 1992, the Secretary of the Louisiana Wildlife and Fisheries Department (the Department) sent a letter to the enforcement division of the Department, advising that, until further notice, the Department would no longer enforce the prohibition against weekend commercial spotted trout fishing.

FACTS
On December 1, 1993, petitioner, Henry Mouton, filed a petition for a writ of mandamus, seeking an order directing the Secretary of the Department to enforce the Trout Plan and, specifically, the prohibition against weekend commercial spotted trout fishing. Thereafter, Samuel Nunez, individually and as President of the Louisiana Senate (Senate), and John Alario, individually and as Speaker of the Louisiana House of Representatives (House), filed a motion to intervene in the action for mandamus, aligning themselves with the Department. The Louisiana Association of Coastal Anglers (LACA) and the Louisiana Environmental Action Network (LEAN) also filed a petition to intervene in the action for mandamus, aligning themselves with Mouton and seeking enforcement of the Trout Plan and the weekend ban on commercial spotted trout fishing.
All parties subsequently entered into the following stipulation of facts:
1.
This matter was set for hearing on January 3, 1994 and it was jointly agreed to by and between the parties that the hearing date would be continued and that this matter would be submitted to the court by stipulation and briefs.
2.
The legal issue presented to this court by the original suit was whether Concurrent Resolution 211 (passed under the authority of La.R.S. 49:969) can legally have the effect of setting aside a provision of the Louisiana Wildlife & Fisheries Commission regulation, which is popularly known as the "Spotted Sea Trout Management Plan."
3.
The following chronology, with attachments, are stipulated to:

*625 a) Between August 9, 1991 and December of 1991 committee meetings and public hearings were held to organize the Rule.
b) On December 20, 1991, the House Natural Resources Subcommittee on Oversight, disapproved of portions of the Trout Plan which prohibited the weekend commercial taking of Spotted Sea Trout. The Subcommittee's disapproval and striking of pertinent portions of the Plan were conveyed to Governor Buddy Roemer by written report (see Exhibit A).
c) On December 30, 1991, Governor Roemer disapproved of the actions of the Subcommittee (see Exhibit B) and the Commission adopted the Spotted Sea Trout Management Plan in its original form.
d) On or before February 20, 1992 under Title 76, Part VII, Chapter 3 § 341, the Spotted Sea Trout Management Measures were promulgated, (see Exhibit C).
e) Subsequently in the 1992 session, Concurrent Resolution HB 211 was passed and is attached as Exhibit D.
f) On September 17, 1992, Joe L. Herring, Secretary of Wildlife & Fisheries issued a memorandum (see Exhibit 1 attached to Petition for Writ of Mandamus filed on December 1, 1993) to the Enforcement Division instructing that Division not to enforce that portion of the Spotted Sea Trout Management Plan and the Enforcement Division has not in fact enforced that provision of the Plan since receiving that memorandum.
Thereafter, on May 5, 1994, the Senate and the House filed a peremptory exception pleading the objections of no cause of action and no right of action and a dilatory exception pleading the objection of unauthorized use of summary procedure. In response to these exceptions, LACA and LEAN filed a motion to strike the exceptions on the ground that they were filed untimely. Mouton subsequently joined in the motion. By judgment, dated August 10, 1994, the trial judge granted the motions to strike as to the dilatory exception, but denied the motions to strike the peremptory exceptions. The peremptory exceptions were referred to the merits.[3]
After a hearing on June 27, 1994, the trial court rendered judgment on September 9, 1994, in favor of Mouton, instructing the Department that the Trout Plan is valid and enforceable in its entirety and that House Concurrent Resolution 211 of the 1992 Regular Legislative Session is invalid. The trial court judgment also made the writ of mandamus peremptory.[4]
From this adverse judgment, the Louisiana Senate and the Louisiana House of Representatives suspensively appealed.[5] On appeal, the Senate and the House assigned the following specifications of error:
1. The trial court erred in denying appellants' peremptory exception and in finding that the plaintiffs had stated a cause of action, where the plaintiffs sought by mandamus to compel an agency to take affirmative action to enforce a rule.
2. The trial court erred in denying appellants' peremptory exception and in finding that the plaintiffs had a right of action to compel an agency to enforce a rule, when that rule had general application and the plaintiffs had no special interest, distinct from the public at large, in its enforcement.
3. The trial court erred in finding that the actions of the legislature in nullifying a portion of a rule of the Louisiana Wildlife and Fisheries Commission by a concurrent resolution, in accordance with La.R.S. 49:969, was subject to a heightened level of scrutiny as affecting the natural resources of the state.

*626 4. The trial court erred in finding that House Concurrent Resolution 211 of the 1992 Regular Section was "invalid" for any reason, and in thereafter granting plaintiffs a mandamus directed to the Department of Wildlife and Fisheries ordering the enforcement of a Rule which had been nullified by that resolution.

STANDING
We must first determine the threshold issue of whether the petitioner (Mouton) and petitioners-intervenors (LACA and LEAN) have standing or a right to bring this action for mandamus.
The exception pleading the objection of no right of action questions the plaintiff's standing or interest to bring suit. LSA-C.C.P. art. 927(5); Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4th Cir.1989). Specifically, standing raises the issue of whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1157-58 (La.App.1st Cir.1992); Palowsky v. Premier Bancorp, Inc., 597 So.2d 543, 546 (La.App. 1st Cir.1992); Ricard v. State, 544 So.2d at 1312. The exception relates specifically to the person of the plaintiff. Ricard v. State, 544 So.2d at 1312.
The peremptory exception may be pleaded in any court prior to submission of the case for decision if proof of the ground of the exception appears in the record. LSA-C.C.P. arts. 927 and 2163; Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1357 (La.1991). Moreover, LSA-C.C.P. art. 927 permits the trial or appellate court to notice the objection of no right of action on its own motion. Murrill v. Edwards, 613 So.2d 185, 189 (La.App. 1st Cir.1992), writ denied, 614 So.2d 65 (La.1993); Byrd v. International Paper Company, 594 So.2d 961, 962 (La.App. 3rd Cir.1992).
Generally, to assert an action, a plaintiff must have a real and actual interest in the action asserted. LSA-C.C.P. art. 681; Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895 (La.1993); Byrd v. International Paper Company, 594 So.2d at 962. Standing is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court. The requirement of standing is satisfied if it can be said that the plaintiff has a legally protectible and tangible interest at stake in the litigation. Richardson v. Reeves, 600 So.2d 138, 140 (La.App. 2nd Cir.1992). In other words, standing requires that the plaintiff have an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. Richardson v. Reeves, 600 So.2d at 140. Moreover, to bring a suit requesting the issuance of a writ of mandamus to a public official, a plaintiff must show some special interest separate and distinct from that of the public at large. Murrill v. Edwards, 613 So.2d at 189; Richardson v. Reeves, 600 So.2d at 140.[6]
In League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441, 447 (La.1980), the Louisiana Supreme Court held that a public right or duty may not be compelled or enforced by a private citizen without a showing of a personal grievance or interest in the outcome. Without a showing of some special interest in the performance sought of a public commission, which is separate and distinct from the interest of the *627 public at large, plaintiff will not be permitted to proceed. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d at 447.
The requirement that a plaintiff in a mandamus proceeding demonstrate some special interest in the action was imposed to ensure a fair presentation and development of the issues by truly adverse parties. Without a showing of such personal and special interest in mandamus cases, interest by the judiciary may surpass the authority allocated by the tripartite system. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d at 1358.
In the instant case, in his petition for writ of mandamus, Mouton alleged that he is a resident of the State of Louisiana and that he often fishes for enjoyment in the Gulf of Mexico and in the territorial waters of Louisiana. Mouton also alleged that he is deeply interested in conservation of the state wildlife and fisheries resources. In their petition of intervention, LACA and LEAN alleged that LACA is an incorporated organization comprised of Louisiana citizens who recreationally fish in Louisiana coastal waters for, among other things, spotted sea trout. These intervenors also alleged that LACA's purpose is to protect the state's coastal and fishing resources, concluding that LACA and its members have a special interest in the enforcement of the Trout Plan. In their petition of intervention, LACA and LEAN also alleged that LEAN is an incorporated community organization, whose express purpose is the preservation and protection of the state's environment for the health, safety, and enjoyment of its members. These intervenors also alleged that its members recreationally fish for spotted sea trout and have a special interest in the enforcement of the Trout Plan.
The allegations of Mouton's petition and the petition of intervention filed by LACA and LEAN show that each seek to compel the performance of a public duty. In such instances, the law clearly requires that there be a special interest. However, neither Mouton nor LACA and LEAN have shown any particular or special interest in the acts which they seek to compel the Department to perform.
Generally, the state's natural resources are held in common trust for all of the citizens of the state. See LSA-Const. art. 9, § 1. Numerous public agencies are "public trustees" of the public trust natural resources, and their primary responsibility is to manage the natural resources within their respective jurisdictions in order to preserve the public's right to use and enjoy these public resources. See Wilkins, James G., and Wascom, Michael, "The Public Trust Doctrine in Louisiana," 52 LLR 861, 896 (1992). Pursuant to constitutional authority, the control and supervision of the wildlife of the state, including all aquatic life, is vested in the Wildlife and Fisheries Commission. LSA-Const. art. 9, § 7.
While each member of the general public has an interest, in equal measure with all other citizens of the state, in the public trusts of the state's various natural resources, including wildlife and fisheries, no one citizen or citizen group has a "special interest" beyond that enjoyed by the general public. Although the authors of "The Public Trust Doctrine in Louisiana," 52 LLR at 898, posit that "the public trust responsibilities of the state should be enforceable against `trustee agencies' by a writ of mandamus or injunctive relief brought against a trustee agency by ... a Louisiana citizen, as a beneficiary of the trust, and thus, an affected party," this supposition does not explain how an ordinary citizen's interest becomes special by virtue of the fact that he is the beneficiary of a public trust and ignores the body of jurisprudence requiring a special interest separate and apart from the general public.[7]
Protection and preservation of the speckled trout population would inure to the benefit of the citizens of this state generally, but *628 not specifically to the benefit of Mouton and LACA and LEAN. There is no allegation or proof that the livelihood, health, welfare, or personal interests of Mouton or LACA or LEAN, or their members, will be directly affected by the failure to enforce the weekend ban on commercial speckled trout fishing. Moreover, we know of no legally protectible and tangible interest Mouton or LACA and LEAN have at stake in a suit for mandamus, nor have these parties pointed out any such interest. Fishing for enjoyment in the Gulf of Mexico and in the territorial waters of Louisiana and a deep interest in conservation of the state wildlife and fisheries are the types of interests possessed by the vast majority of the citizenry of the state as concerns the state's natural resources. Additionally, simply because a group of citizens, who may be recreational fishermen, organize to assist with the protection of the state's coastal and fishing resources or to assist with the preservation and protection of the state's environment for the health, safety, and enjoyment of its members does not confer upon such organization a "special" interest in those resources or the protection thereof sufficient to authorize the use of a mandamus action. While we acknowledge that Mouton and LACA and LEAN have an interest in the enforcement of the ban on weekend commercial speckled trout fishing, that interest is, at best, remote and does not rise to the level necessary to constitute a real and actual interest. Accordingly, we find that Mouton and LACA and LEAN lack standing to maintain an action for mandamus under the facts and circumstances presented in the instant case.[8]
Because we have determined that Mouton and LACA and LEAN do not have standing to institute the action for mandamus, we find it unnecessary to address the various issues raised in this appeal.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of Mouton, making peremptory the writ of mandamus, is hereby reversed. Mouton, LACA, and LEAN have no standing to bring the action for mandamus. Mouton, LACA, and LEAN are cast for all costs of these proceedings.
REVERSED.
NOTES
[1] LAC Title 76, Part VII, Chapter 3, § 341 provides, in pertinent part, as follows:

B. There shall be a prohibition of the commercial take from Louisiana waters, and the commercial possession of spotted seatrout on the waters of the state, including but not limited to a prohibition of the possession of spotted seatrout during the closed period on any vessel possessing or fishing any seine, gill net, trammel net, or hoop net, whether taken from within or without Louisiana waters from sunset Friday through sunset Sunday for every weekend of the open commercial spotted seatrout season.
[2] House Concurrent Resolution No. 211 provides, in pertinent part, as follows:

A CONCURRENT RESOLUTION to nullify that portion of the rules adopted by the Louisiana Wildlife and Fisheries Commission which prohibits commercial fishermen from taking or possessing spotted sea trout from sunset Friday through sunset Sunday of the weekends during the period of time in which the spotted sea trout fishery is open to commercial fishing.
WHEREAS, the Louisiana Legislature is authorized by R.S. 49:969 to nullify or suspend any rule or regulation adopted by a state agency; and
WHEREAS, the Louisiana Wildlife and Fisheries Commission has adopted rules to prohibit commercial fishermen from taking spotted sea trout on weekends during the period in which the spotted sea trout fishery is open to commercial fishing; and
WHEREAS, these rules impose an unreasonable economic hardship on the commercial fishing industry.
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana does hereby nullify that portion of the rules adopted by the Louisiana Wildlife and Fisheries Commission which prohibits commercial fishermen from taking or possessing spotted sea trout from sunset Friday through sunset Sunday of the weekends during the period of time in which the spotted sea trout fishery is open to commercial fishing.
BE IT FURTHER RESOLVED, that this Resolution shall be effective upon final adoption by the Legislature.
[3] The judgment on the merits is silent as to any ruling by the trial court on these issues.
[4] We note that the Department did not appeal the trial court judgment.
[5] Although the trial court denied the legislature's motion for a suspensive appeal, pursuant to an application for supervisory writs, this court in Henry Mouton v. Department of Wildlife and Fisheries for the State of Louisiana, 94-2062 (La.App. 1st Cir. 10/19/94), reversed the trial court's denial and entered a judgment in favor of the legislature, granting their motion for a suspensive appeal.
[6] An exception to the general requirement of a particular or special interest is available when a public official charged with the unlawful performance or refusal to perform a legal duty discriminates against a taxpayer by increasing his tax burden or otherwise injuriously affecting his personal property, in which case the taxpayer need not show special interest in order to sustain a right of action. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980); Bussie v. Long, 286 So.2d 689 (La. App. 1st Cir.1973), writ refused, 288 So.2d 354 (La.1974); State v. Mayor and Board of Alderman of City of Tallulah, 549 So.2d 891 (La.App. 2nd Cir.1989), writ denied, 556 So.2d 39 (La.1990). Furthermore, there is a distinction between taxpayer suits to restrain unlawful action by public officials, where a special interest may not be required, and a suit to compel the performance of a public duty where a special interest is required. State v. Mayor and Board of Alderman of City of Tallulah, 549 So.2d at 894.
[7] The authors of "Public Trust Doctrine in Louisiana," 52 LLR at 898, also submit that the Attorney General, on behalf of all of the citizens of the State of Louisiana, has standing to bring an action for mandamus or injunctive relief. However, this issue is not before us, and the resolution of whether the Attorney General has standing to institute such an action will be determined at some future time when that issue is before the court.
[8] Inasmuch as petitioner and intervenors did not seek a declaratory judgment, we specifically do not address the issue of whether Mouton, LACA, or LEAN have standing to institute an action for declaratory judgment or any other action to declare HCR No. 211, or any other legislation, unconstitutional. The resolution of that issue must be properly raised by the parties before this, or any, court can make that determination.