|, The appellants, Gregory and Maria Aviles Guth, appeal two judgments. The first judgment is a February 22, 2015 judgment rendered in open court and signed in chambers on February 25, 2015, which denied .the Guths’ motion for summary judgment and granted the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College’s (Board) motion for summary judgment and dismissed all of the Guths’ claims for additional compensation and damages with prejudice. The second judgment, dated March 24, 2015, granted the peremptory exceptions of no cause of action, no right of action and prescription filed by the City of New Orleans and dismissed the claims pursuant to their petition for damages and divestment of unlawful gains under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and the Louisiana Racketeering Act (LRA), La. R.S. 15:1351, et seq. We affirm. •
FACTS AND PROCEDURAL HISTORY
This case arises out of the Board’s attempt to expropriate a piece of immovable property for a hospital project center in New Orleans. The' subject ^property, which was owned by the Guths and located at 2401 Palmyra Street, was in the footprint of the planned new VA Medical Center and an adjacent affiliated healthcare teaching and training facility, the Academic Medical Center, which was under the auspices of the Board and would replace the old abandoned Charity Hospital. Plans were finalized in accordance with federal laws and regulations and pursuant to a memorandum of understanding between the VA and the Board related to shared services, obtaining and making available to the VA property upon which to construct the medical center and lastly, a cooperative endeavor agreement (CEA) between the Board, the City and the State of Louisiana to make available property to be acquired by the Board in proximity to the Academic Medical Center. The CEA was entered into by the parties pursuant to Article 7, Section 14(C) of the Constitution of Louisiana, Section 9-314 of the Home Rule Charter of the City, and applicable state statutes.
On December 8, 2009, the Board sent the'Guths a notice of the expropriation of the subject property on Palmyra Street.[1] On June 16, 2010, the Guths were sent a cover letter from the Board’s relocation agent, Volkert, Inc., enclosing among other *583 things a written offer of just compensation in the amount of $173,000,00 for the Guths’ land and" improvements. On June 10, 2010, the Guths allegedly effectuated a lease of commercial property with Nicole Heltz effective through June 9, 2015. However, this lease was never recorded. In July of 2010, Ms.- Heltz |Rwas sent general information notices and notices of eligibility for relocation assistance and was offered a relocation package prior to eviction proceedings pursuant to the Uniform Relocation Act (URA) under Title 49 of the Federal Registry (49 C.F.R.) § 24, etseq., which basically was created to help small businesses receive compensation- for expenses incurred in the relocation and the re-establishment of the small business.
On August 24, 2010, the Board filed the expropriation suit in the Orleans Parish Civil-District Coui't pursuant to La. R.S. 19:141 et seq., with the “estimate of compensation” for the property at $173,000.00,' which was placed into the registry of the court. The title to the property was then vested in the Board pursuant tó La. R.S. 19:145. On August 26, 2010, pursuant to La. R.S. 19:145, the trial court signed an order of expropriation which transferred the ownership . of the property to the Board, noting “any and all leases affecting the above described property are hereby cancelled and terminated.!’
On September 1, 2010, Mr. Guth, in his capacity as counsel for the Guths, answered the expropriation petition, asserting that the Board’s failure to estimate and include the business losses in the “estimate of compensation” caused a direct and measurable business/income loss as a result of the expropriation and sought additional compensation and declaratory relief. Mr. Guth -also filed a motion to permit the withdrawal of the funds which the Board had placed in the registry of .the court. ■The trial court granted the Guths’ motion on November 16, 2010,. and the Guths wiffidre^y the $173,000.00. On October 27, 2010, theyBoard filed two Urales for possession of premises pursuant to a rule for eviction ini New Orleans First City Court to effectuate the eviction of the Guths and their tenant, Ms. Heltz, the alleged co-owner. and operator of Jodi’s Corner d/b/a the Outer Banks Bar located at 2401 Palmyra Street.
On November 8, 2010, the Guths filed .a motion to compel discovery responses requesting that the Board “identify, by .address and purchase price all properties acquired by you , (the Board) within the footprint of the hospitals; and provide the appraisals of. said properties and photographs thereof.” The trial court heard the motion to compel discovery responses on January 12,- 2011 and denied the motion.
On December 12, 2010, the Guths filed a supplemental, answer in which they reasserted their claims for inadequate compensation for the subject property and business operation by his tenants thereon and their challenges to the CEA and Louisiana expropriation law. The Guths added claims that the Board had engaged in unlawful and deceptive acts and that all contracts executed by the Board were null and void.
On January 10, 2011, the Guths, filed a pleading entitled second and amending verified petition for injunctive preliminary and/or permanent injunction. In this verified petition, the Guths added Ms. Heltz as an additional party and lessee of the subject property located at 2401 Palmyra. Mr. Guth, apparently acting as counsel for Ms. Heltz, asserted in the pleadings -that if allowed .to have a warrant of eviction and have Ms. Heltz evicted from the premises based . on a . non-kfinal judgment, Ms. Heltz’s civil and due process rights would be wrongfully terminated and she would suffer irreparable injury, damage and loss *584 in the form of the loss of her business and personal property and livelihood. Not only was the pleading signed by Mr. Guth as counsel for the defendants, but both Mr. Guth and Ms. Heltz verified the allegations. Based on these allegations the duty judge signed ex parte temporary restraining order. On January 14, 2011, the trial court after a hearing on the matter denied injunctive relief.
On June 22, 2011, Mr. Guth filed a motion for summary judgment on the unconstitutionality of the Board’s compensation scheme for commercial property owners. The allegation was that the Board acted unconstitutionally when it only compensated owners of commercial properties for the value of their land and improvements and does not compensate them for their business losses on the property. However, on December 11, 2013, Mr. Guth filed a revision to the June 22, 2011 motion (the Guths’ second motion for summary judgment), again reasserting that they were entitled to compensation for the business located at 2401 Palmyra known as the Outer Banks Bar and that this business was under lease to Ms. Heltz and operated by Ms. Heltz pursuant to a lease that was dated June 10, 2010. On January 23, 2014, the trial court denied the Guths’ second motion for summary judgment.
On April 29, 2013, while the Guths’ first motion for summary judgment was pending but before the Guths’ second motion for summary judgment was denied, the Guths filed a petition against the City, in addition to the Board, Louisiana | (¡Governor Bobby Jindal, and other third party/cross claim defendants, claiming that the defendants formed a criminal enterprise for the purposes of defrauding and depriving the Guths and other property owners in the footprint of the “Project” of the full value of their properties and/or businesses through a pattern of racketeering. The Guths were seeking damages and divestment of unlawful gains pursuant to RICO and the state law counterpart, LRA. On June 28, 2013, the Board filed exceptions to the first RICO petition. On July 17, 2013, the Guths, filed a supplemental and amending petition for damages and divestment of unlawful gains pursuant to RICO, changing designations of the parties to add more specificity as to who the alleged “persons” were and their pattern of alleged racketeering activities. On August 15, 2013, the Board filed multiple exceptions to the Guths’ second RICO petition. These included a peremptory exception of no right of action, a peremptory exception on no cause of action, a peremptory exception of prescription, a declinatory, exception of lack of subject matter jurisdiction for failure to exhaust administrative remedies, a dilatory exception of vagueness, a declina-tory exception of insufficiency of service of process, and an exception of res judica-ta. On July 25, 2013 the trial court heard the exceptions of the Board on the first RICO petition and ruled from the bench granting the Board’s exceptions and dismissed the Guths’ first RICO claims with prejudice. This judgment was signed October 28, 2013.
On October 10, 2013, the trial court heard the exceptions of the Board on' the Guths’ second RICO petition and ruled from the bench granting the Board’s |7exceptions to the Guths’ second RICO claim with prejudice. This judgment was signed on November 22,2013.
On December 8, 2014, the Board filed a motion for summary judgment on the Guths’ alleged losses resulting from the expropriation. On January 5, 2015, the Guths responded with a third motion for summary judgment. On January 22, 2015, the cross-motions were argued. The trial court granted the Board’s motion for sum *585 mary judgment and denied the Guths’ motion for summary judgment which was signed into judgment on February 25, 2015, and adjudicated that the total compensation that the Guths were entitled to was $173,000.00 as- the full extent of their losses from the expropriation.
On January 21, 2015, the City filed exceptions to the Guths’ first RICO petition and second RICO petition; peremptory exception of no cause of action; peremptory exception of no right of action; and, peremptory exception of prescription. On March 24, 2015, the trial court granted the City’s exceptions pursuant to La. C.C.P. art. 927(A)(1), 927(A)(5) and 927(A)(6), dismissing all claims made in the Guths’ amended RICO petition against the City of New Orleans with prejudice. -
The Guths now appeal.
DISCUSSION
Thé summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. Bernard v. Ellis, 2011-2377 (La.7/2/12), 111 So.3d 995. In ruling on a motion for summary judgment, |sthe judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Fournerat v. Farm Bureau Ins. Co., 2011-1344 (La.App. 1 Cir. 9/21/12), 104 So.3d 76. Generally, for purposes of summary judgment, “material facts” are those that potentially ensure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute. Seals v. Omni Bank Ins. Companies, 2012-0863 (La.App. 4 Cir. 11/28/12), 104 So.3d 667. Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Lomax v. Ernest Mortal Convention Center, 2007-0092 (La.App. 4 Cir. 7/11/07), 963 So.2d 463.
In the instant case, the primary issue between the Board and the Guths is whether the Guths are entitled to additional compensation in the way of business losses for the Outer Banks Bar. In support of its motion for summary judgment, the Board makes a prima facie case that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. The Guths attempted to defeat the Board’s motion for summary judgment and have their third motion for summary judgment granted through the introduction of a verified statement of uncontested facts in support of motion for summary judgment on the Guths’ business losses resulting from the expropriation sworn to by Mr. Guth. However, Mr. Guth’s verified statement is directly at odds with his prior statements made in verified pleadings as counsel for Ms. Heltz. These discrepancies deal with who downed the business, the Guths- or Ms. Heltz.[2] Under Louisiana law,, it is impermissible for a party to attempt to create a triable issue of fact to defeat a motion for summary judgment by filing an affidavit or other sworn statement that contradicts that person’s prior sworn statements. See McLaughlin v. French Riviera Health Spa, Inc., 99-0546 (La.App. 5 Cir. 10/26/99), 747 So.2d 652, 655-56.
As stated above, the record indicates that the Board made a prima facie case that there were no genuine issues of material fact and that it was entitled to judg *586 ment as a matter' of law. The Guths have offered nothing to refute the Board’s case. In fact, they have offered a statement that is at odds with earlier statements made by Mr. Guth. Accordingly, we find that the trial court’s granting of the Board’s motion for summary judgment was proper.[3]
With regards to the trial court’s granting of the City’s peremptory exceptions of no cause of action, no right of action and prescription, we also find that the trial court’s judgment was proper.[4]
Louisiana Code of Civil Procedure Article 854 sets forth the pleading requirements for petitions under Louisiana’s system of 'fact pleading. Accordingly, it is well settled in Louisiana jurisprudence that a plaintiff must allege in its Impetition specific facts in support of its claim in order to establish a cause of action. The mere conclusion of the pleader, unsupported by facts, does not set forth a cause of action. Latham v. Latham, 216 La. 791, 44 So.2d 870 (1950). A cause of action cannot be set out by pleading conclusions of law; rather, the facts bn which such conclusions are drawn must be stated. Devers v. Southern University, 97-0259 (La.App. 1 Cir. 4/8/98), 712 So.2d 199. The function of an exception of no cause of action is to 'test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts' alleged in the pleading. City of New Orleans v. Bd. of Dirs. of La. State Museum, 98-1170, p. 9 (La.3/2/99), 739 So.2d 748, 755; State ex rel Ieyoub v. Racetrac Petroleum, Inc., 2001-0458 (La.App. 3 Cir. 6/20/01), 790 So.2d 673, 677. To withstand an exception of no cause of action, the petition must set forth material facts upon which the cause of action is based. Ieyoub, 790 So.2d at 677-678; Plaquemine Marine, Inc. v. Mercury Marine, 2003-1036, p. 4 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, 115. Mere conclusory allegations are legally insufficient. Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, 131.
The Guths’ petitions-fail to allege any facts which give rise to a cause of action provided by the LRA. All acts in the expropriation of their property by the City and the Board were in the legitimate performance of duties as authorized by the Louisiana Constitution or by statute.
The exception of no' right of action questions the plaintiff’s standing or interest to bring suit. La. C.C.P. art. 927(5); Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4 Cir.1989). Specifically, standing raises the issue of whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular. grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1157-1158 (La.App. 1 Cir.1992); Palowsky v. Premier Bancorp, Inc., 597 So.2d 543, 546 (La.App. 1 Cir.1992); Ricard v. State, 544 So.2d at 1312. The exception relates specifically to the person of the plaintiff. Ricard v. State, 544 So.2d at 1312.
. An action can only be brought by a person having a real and actual interest in what he asserts. La. C.C.P. art. 681. The function of the exception of no *587 right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015 (La.11/30/94), 646 So.2d 885. Standing is a- concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is present to the court. The requirement of standing is satisfied if it can be said that the plaintiff has a legally protected and tangible interest at stake in the litigation. Richardson v. Reeves, 600 So.2d 138, 140 (La.App. 2 Cir.1992).
The Louisiana Racketeering Statute provides in pertineqt part: “Any person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action against any person engaged in racketeering activity who violates a provision of R.S. 15:1353. La. R.S. 15:1356. The Guths , do not have 112standing or a right of. action to bring any RICO claims agáinst the City as they do not allege any injury or. loss having already occurred, as required by La. R.S. 15:1353. While the Guths’ petition alleges that their injury or loss is inadequate compensation for the value of their property and business, that very,value is the subject of the instant expropriation suit and the Guths cannot show any injury or damages sustained by them to support a right of action to bring a RICO claim against, the City.
The party raising the peremptory exception of prescription typically bears the burden of proof. Spott v. Otis Elevator Company, 601. So.2d .1355 (La.1992) citing Langlinais v. Guillotte, 407 So.2d 1215 (La.1981). This is the,rule unless prescription is evident from the face of the pleadings, in which case the .plaintiff bears the burden of showing the action has not prescribed. Id.citing Lake Providence Equipment Co. v. Tallulah Production Credit Association, 257 La. 104, 241 So.2d 506 (La.1970).
Because the Guths’ claims are of general negligence allegations, i,e. fraud, negligent misrepresentation, negligence and conspiracy, the prescriptive period is one year, as mandated by Louisiana Civil Code Article 3492. The Guths’ RICO petition alleges acts occurring up until June of 2009, while their RICO petitions were filed in 2013. ■ Based on the Guths’ RICO petitions, their claims1 are admittedly expired and prescribed.
^CONCLUSION
For the above and foregoing reasons, we affirm the'trial court’s judgments appealed here by the Guths.
AFFIRMED

. At the time the expropriation proceedings began, La. R.S. 19:2.2 had not been amended to its present form as' amended in 2012. Therefore, the record supports that the Board fully complied with all of the pre-expropriation procedures required by La. 19:2.2 in effect in 2010. Specifically, the Board was not required to produce copies of their appraisal reports to property owners at least 30 days before filing its petition for expropriation.

. Under Louisiana expropriation law, the lessee of a commercial property, not the lessor, is the person entitled to compensation for loss of the business operating in a leased premises. See State, Dept. of Transportation and Dev. v. Exxon Corp., 430 So.2d 1191, 1193-94 (La.App. 1 Cir.1983).

. As such,' the trial court’s denial of the Guths’ motion for summary judgment was also proper,

. The. Guths brought the same RICO claims against the Board, the State of Louisiana, Volkert, Inc. and Roedel. Parsons, The trial court dismissed all of the Guths’ RICO claims against the other third party and/or cross claim defendants, granting the parties’ exceptions of no cause of action, no right of action, prescription, lack of subject matter jurisdiction and vagueness.