BOURBON INVESTMENTS, LLC
and 209 Realty, LLC

v.

NEW ORLEANS EQUITY LLC, et al

NO. 2015–CA–1234

Court of Appeal of Louisiana,
Fourth Circuit.

DECEMBER 21, 2016

Brent B. Barriere, E. Blair Schilling, FISHMAN HAYGOOD, L.L.P., 201 St. Charles Avenue, Suite 4600, New Orleans, LA 70170, Bernard L. Charbonnet, Jr., David M. Fink, LAW OFFICES OF BERNARD L. CHARBONNET, JR., 365 Canal Street, One Canal Place, Suite 1155, New Orleans, LA 70130, COUNSEL FOR PLAINTIFFS/APPELLANTS

Randall A. Smith, Stephen M. Gele', Sara E. Porter, SMITH & FAWER, L.L.C., 201 St. Charles Avenue, Suite 3702, New Orleans, LA 70170, Melissa Culotta, 2535 North Causeway Blvd., Suite 201, New Orleans, LA 70163, Michael A. McNulty, Jr., 622 Baronne Street, Suite 1, New Orleans, LA 70113, Daniel Lund, C. Byron Berry, Jr., MONTGOMERY BAR-

NETT, L.L.P., 1100 Poydras Street, 3200 Entergy Centre, New Orleans, LA 70163, Camille E. Gauthier, Thomas M. Flanagan, FLANAGAN PARTNERS, L.L.P., 201 St. Charles Avenue, Suite 2405, New Orleans, LA 70170, David C. Voss, Edwin A. Graves, Jr., David W. Carley, GRAVES CARLEY, L.L.P., 2137 Quail Run Drive, Building B, Baton Rouge, LA 70808, Peter S. Koeppel, W. Scarth Clark, Donesia D. Turner, KOEPPEL TRAYLOR, L.L.C., 2030 St. Charles Avenue, New Orleans, LA 70130, COUNSEL FOR DEFEN-DANTS/APPELLEES

(Court composed of Judge Dennis R. Bagneris, Sr., Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Madeleine M. Landrieu)

Judge Roland L. Belsome

Plaintiffs, Bourbon Investments, L.L.C. and 209 Realty, L.L.C., appeal the dismissal of their action upon the granting of Defendants' exceptions of lack of procedural capacity and no right of action. Plaintiffs also appeal the trial court's denial of their motion for new trial. For the reasons that follow, we affirm the trial court's judgments.

**FACTS AND PROCEDURAL HISTORY**

This case arises out of Plaintiffs' failed attempt to purchase Galatoire's Restaurant in New Orleans. Since its founding in 1905, Galatoire's had been owned and operated by members of the Galatoire family. In 2005, the Galatoire family opened a second restaurant, Galatoire's Bistro, in Baton Rouge.

In 2008, certain members of the Galatoire family decided to sell both Galatoire's Restaurant and Galatoire's Bistro. These family members approached Mr. Melvin Rodrigue and asked him to contact potential purchasers. At that time, Mr. Rodrigue had worked for the Galatoire family for over twelve years, was the Chief Operating Officer of Galatoire's Restaurant, and

owned a thirty-percent interest in the limited liability company that owned and operated Galatoire's Bistro. Mr. Rodrigue contacted two potential investors, Mr. Daniel O. Conwill, IV and Mr. John C. Simpson. With Mr. Rodrigue's permission, Mr. Conwill then recruited Mr. H. Hunter White and Mr. Simpson recruited Mr. Donald T. Bollinger. Mr. Rodrigue, along with these four investors, formed Bourbon Investments, L.L.C. for the purpose of purchasing the two restaurants. Bourbon Investments filed articles of organization with the Louisiana Secretary of State on October 15, 2008. About that same time, 209 Realty L.L.C., of which Bourbon Investments is the sole member, was formed for the purpose of purchasing the real property on which the New Orleans based Galatoire's Restaurant was located.

In September 2009, following negotiations, Bourbon Investments submitted an Asset Purchase Agreement ("APA") outlining the proposed purchase of the two restaurants to the boards of Galatoire's Restaurant, L.L.C. ("GRLLC") and Baton Rouge Restaurant, L.L.C. ("BRLLC"), the entity that owned Galatoire's Bistro. At the same time, 209 Realty submitted a Real Estate Purchase Agreement ("RPA") for the purchase of the land upon which Galatoire's Restaurant is located. Twelve members of the Galatoire family, who collectively owned seventy-five percent of the assets to be sold, approved the purchase agreements. The three remaining family members, represented by attorney Henry W. Kinney, III (hereinafter referred to as the "Kinney clients"), refused to approve the sale. Instead, on October 9, 2009, the Kinney clients chose to exercise a right of first refusal that they retained over the real property. On October 21, 2009, Mr. Conwill notified the sellers that 209 Realty had elected not to go through with the purchase.

On December 8, 2009, the Kinney clients exercised their right of first refusal and purchased the real property and both restaurants.[1] That same day, the Kinney clients sold the restaurants and land to Defendant New Orleans Equity, L.L.C., of which Mr. Rodrigue is a board member and the Chief Operating Officer.

Shortly thereafter, two members of Bourbon Investments and 209 Realty, Mr. Conwill and Mr. White, decided to file suit against Defendants for breach of contract.[2] Two other members, Mr. Bollinger and Mr. Simpson did not wish to be involved in the suit, so they completed documents purporting to transfer their membership interests in Bourbon Investments and 209 Realty to Mr. Conwill and Mr. White. The final member of Bourbon Investments, Mr. Rodrigue, was not informed of the membership transfers. The day after the alleged membership transfer, Mr. Conwill and Mr. White instituted the action on behalf of Bourbon Investments and 209 Realty requesting a declaratory judgment, specific performance of the APA and RPA, and/or damages for breach of contract. Plaintiffs named multiple Defendants in the suit, including New Orleans Equity, L.L.C., the Kinney clients, and various other members of the Galatoire family.

Defendants filed multiple exceptions, including the two exceptions at issue in this appeal: 1) a peremptory exception of no right of action and 2) a dilatory exception of lack of procedural capacity. The hearing on the exceptions took place on April 30, 2015. Defendants argued that Plaintiffs lacked the necessary authorization from a majority of members of the LLCs to authorize the filing of the lawsuit. Specifically, Defendants argued that Mr. White and Mr. Conwill were the only two members given an opportunity to vote on the lawsuit, although the companies had six total members.[3] Plaintiffs contended that Mr. Rodrigue and Mr. Nugent were never members of the LLCs and that following the membership transfer Mr. White and Mr. Conwill were the only members of the LLCs at the time the suit was filed. Therefore, Plaintiffs argued, Mr. White and Mr. Conwill had full authority to file the lawsuits.

At the hearing, the trial court stated on the record that it was granting the exception of lack of procedural capacity. The trial judge found that Mr. Rodrigue was a member of Bourbon Investments, and as a member he was entitled to notice and opportunity to consent to the transfer of membership interests. As Mr. Rodrigue had not voted, there was no unanimity in the decision so the full membership interests of Mr. Simpson and Mr. Bollinger were not transferred. Rather, Mr. Simpson and Mr. Bollinger retained their voting and management participation rights in the LLCs until the time there was a unanimous vote of all members to transfer the

---

1. In a separate decision, the trial court found that the Kinney clients had not properly exercised their right of first refusal because of several changes that had been negotiated in the purchase agreement. The principal change being that the Kinney clients would not be required to pay off half of Mr. Rodrigue's share of the bank debt owed on Galatoire's, as Bourbon Investments had agreed to assume under the APA and RPA. The trial court determined that Galatoire's would not be permitted to enforce the payment provision against Mr. Rodrigue considering that Galatoire's had breached its obligations with Bourbon Investments, 209 Realty, and Mr. Rodrigue. No appeal was taken from this judgment.

2. The claim concerned the changes in the terms of the sale to the Kinney clients from those included in the APA and RPA.

3. The other four alleged members were Mr. Rodrigue, Mr. James Nugent, Mr. Bollinger, and Mr. Simpson. It was later determined that Mr. Nugent was never a member of either LLC.

full interests. The trial judge went on to state that Mr. Rodrigue also had a right to participate in the decision to proceed with the lawsuit. The trial judge concluded that the finding that Plaintiffs lacked procedural capacity "moots out everything else" and dismissed the matter.

In the court's June 22, 2015 written judgment, the court granted both the exception of lack of procedural capacity and the exception of no right of action. The court declared the other exceptions to be moot and dismissed the action with prejudice.

Plaintiffs filed a motion for new trial, which was denied. This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Plaintiffs assert that the trial court erred in granting the exceptions of lack of procedural capacity and no right of action. Plaintiffs also contend that the trial court erred in denying their motion for new trial.

## STANDARD OF REVIEW

█ Appellate courts review the trial court's factual findings under the manifest error standard of review. *Gordon v. Gordon*, 2016–0008, p. 2 (La.App. 4 Cir. 6/8/16), 195 So.3d 687, 688–89, *writ denied*, 2016–1282 (La. 10/28/16). This standard precludes a reviewing court from setting aside the trial court's finding of fact unless the finding is clearly wrong in light of the record as a whole. *Id.* So long as the trial court's factual findings are reasonable, a reviewing court may not reverse even if it would have weighed the evidence differently had it been the trier of fact. *Id.* (citing *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). "Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous." *Ardoin v. Firestone Polymers, L.L.C.*, 2010–0245, p. 6 (La. 1/19/11), 56 So.3d 215, 219.

Legal issues are reviewed using the *de novo* standard of review. *Harper v. State ex rel. Its Dep't of Health & Hosps.*, 14–0110, p. 7 (La.App. 4 Cir. 9/9/15), 176 So.3d 479, 486. Additionally, "[w]hen the law is erroneously applied by the trial court, the de novo standard of review is also used." *Id.*

## LAW AND DISCUSSION

The assignments of error presented on appeal by Plaintiffs all rely on their contention that the LLC membership transfers from Mr. Simpson and Mr. Bollinger to Mr. Conwill and Mr. White were effective and that Bourbon Investments had only two—or at most three—members at the time the lawsuit was filed.

### Transfer of Membership Interests

Plaintiffs first argue that Mr. Rodrigue was not a member of Bourbon Investments and thus his consent was not needed for the transfer of membership interests. Plaintiffs then claim that even if Mr. Rodrigue were a member, his consent was not needed for the transfer to be valid. Plaintiffs maintain that the general rule that requires unanimous consent for the transfer of full membership interests in an LLC does not apply where such transfer takes place between current members.

█ With regard to the assertion that Mr. Rodrigue was not a member of Bourbon Investments, we find that he became a member at the inception of the company and never resigned from the position.

At the exception hearing, Mr. Rodrigue testified to his extensive involvement with Bourbon Investments. He stated that he was contacted in 2008 by some members of the older generation of the Galatoire family who asked him to put together a group of people to purchase Galatoire's Restaurant. He indicated that the family members expected him to lead the group because of his history of involvement with

Galatoire's. Mr. Rodrigue testified that he approached Mr. Conwill and Mr. Simpson, who with his permission reached out to Mr. White and Mr. Bollinger, and together the five men formed Bourbon Investments for the sole purpose of purchasing the restaurants. Mr. Rodrigue stated that he was the member of the LLC who primarily spoke with the Galatoire family on behalf of Bourbon Investments regarding negotiations for the sale. Additionally, evidence was presented showing that he signed documents on behalf of Bourbon Investments. His was the sole signature on the confidentiality agreement that accompanied the purchase agreement. He also signed the letter of intent to purchase, along with Mr. Conwill.

Mr. Conwill testified at the hearing that, in his opinion, Mr. Rodrigue did not have a membership interest in Bourbon Investments because Mr. Rodrigue made no initial capital contribution. Mr. Conwill stated that because Mr. Rodrigue's contribution was to be future services, including effectuating the |₈purchase and acting as CEO of Bourbon Investments, the failure of the purchase precluded him from ever becoming an official member of the LLC. However, as he admitted, these assertions were based on the terms of an operating agreement that never came in to existence. While Bourbon Investments was in the process of drafting an operating agreement setting forth proposed classes and terms of membership at the time the APA and RPA were completed, the operating agreement was never signed and thus never became effective. Mr. Conwill also acknowledged that Mr. Rodrigue had negotiated with the Galatoire family on behalf of Bourbon Investments, and he admitted that he had never disavowed Mr. Rodrigue's authority to act on behalf of the LLC.

After an examination of the record as a whole, we find no manifest error in the trial court's determination that Mr. Rodrigue became a member of Bourbon Investments at its inception and remained a member and as such had a right to vote on any transfer of membership interests in the LLC.

■ In light of our affirmation of the trial court's finding that Mr. Rodrigue was a member of Bourbon Investments, we find that the alleged transfer of membership interests was not properly effectuated because the requisite unanimous written consent of all members was not given. We also find that because the membership transfer was incomplete, Mr. Simpson and Mr. Bollinger remained members of the LLCs.

The issue of whether membership interests may be freely transferred between members of a limited liability company without the need for unanimous |₉consent of all current members concerns the interpretation of Louisiana LLC law. Therefore, it presents a question of law and is reviewed by this Court under a *de novo* standard of review. *See Broussard v. Hilcorp Energy Co.*, 2009–0449 (La. 10/20/09), 24 So.3d 813, 815–16.

La. R.S. 12:1330 provides that a membership interest in a limited liability company is assignable, but such assignment entitles the assignee to only "receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned." La. R.S.12:1332 provides that, except as otherwise provided in the articles of organization or in an operating agreement, "[a]n assignee of an interest in a limited liability company shall not become a member or participate in the management of the limited liability company unless the other members unanimously consent in writing." The statute further states that an assignor con-

tinues to be a member unless and until the assignee becomes a member.

It is undisputed that Bourbon Investments had no written, signed operating agreement. Absent an operating agreement, we are restrained by the statutory language of La. R.S. 12:1332 requiring unanimous written consent for an assignee of LLC membership to become a member or fully participate in the management of the LLC.

 When a law is clear and unambiguous as written, no further interpretation may be made in search of legislative intent. La. C.C. art. 9; *Cleco Evangeline, LLC v. Louisiana Tax Comm'n*, 2001–2162 (La. 4/3/02), 813 So.2d 351, 354. "Varying from the literal language of a statute and finding 'room for construction' or interpretation of the statute is done infrequently by courts and only under limited circumstances." *Abuan ex rel. Valdez v. Smedvig Tankships, Ltd.*, 2000–1120 (La.App. 4 Cir. 4/11/01), 786 So.2d 827, 831, *writ denied sub nom. Abuan v. Smedvig Tankships, Ltd.*, 2001–1752 (La. 9/28/01), 798 So.2d 117. Only where the plain language of a statute would defeat the clear purpose of the lawmakers may a court "consider the spirit and reason of a statute." *Id.*

Plaintiffs argue that the transfer restrictions set forth in La. R.S. 12:1332 apply only when the assignment is made to a third party who wishes to become a member of the LLC. Plaintiffs cite to *Destiny Servs., L.L.C. v. Cost Containment Servs., L.L.C.*, 2010–1895, 2011 WL 4375318 (La. App. 1 Cir. 9/20/11) in support of their position. However, that case is clearly distinguishable from the present case in that it did not involve the assignment of interest to individuals who were already members. The court in the *Destiny Servs.* case noted as dicta that La. R.S. 12:1332 generally applies when a member sells his interest to a third party, but the court did not

hold that the statute fails to apply to assignments between members. *Id.* at *4.

The literal language of the statute does not support Plaintiffs' interpretation of La. R.S. 12:1332. The plain language of the statute requires unanimous written consent of all members for an assignee to become a member of or participate in the management of the LLC. The statute does not differentiate between a third party assignee and a current LLC member assignee. The fact that the legislature did not draft a separate set of rules for membership transfers between current LLC members further supports the conclusion that the default transfer restrictions apply regardless of whether the assignee is a third party or a current member.

While LLCs are free to alter the default rules regarding transfer of membership through their articles of organization or through an operating agreement, in this case neither was done. Therefore, unanimous written consent of all current members was required for Mr. Conwill and Mr. White to assume the full membership interests of Mr. Simpson and Mr. Bollinger. Mr. Rodrigue was not informed that Mr. Simpson and Mr. Bollinger intended to transfer their membership interests, and was not provided an opportunity to vote on the transfers. Therefore, unanimous written consent of all members for the transfer was not given as is required for a full transfer of membership interest per Louisiana LLC law. Because the requisite unanimous written consent was not given in this case, Mr. Conwill and Mr. White did not assume the full membership interests of Mr. Simpson and Mr. Bollinger, principally their voting rights. Rather, Mr. Simpson and Mr. Bollinger maintained their membership interests insofar as they retained their right to participate in the management of the LLC.

 For these reasons, we find that absent provisions in an operating agree-

ment or articles of organization that provide otherwise, unanimous written consent of all members is required to fully transfer membership interest between LLC members. This finding leads to our determination that at the time the lawsuit was filed, Bourbon Investments had five members, a majority of which would have been required to approve the filing of the lawsuit on behalf of Plaintiffs.

## Dilatory Exception of Lack of Procedural Capacity

■ Considering our finding that there were five members of Bourbon Investments at the time the lawsuit was filed, we affirm the trial court's finding that Mr. Conwill and Mr. White lacked the procedural capacity to file this lawsuit on behalf of Plaintiffs.

The lack of procedural capacity is a dilatory exception which generally merely delays the progress of an action. *See* La. C.C.P. arts. 923, 926. When the grounds of the objection pleaded in a dilatory exception can be removed by amendment of the petition, a judgment sustaining the exception should order the plaintiff to remove the grounds for objection. La. C.C.P. art. 933. However, if the grounds of the objection cannot be removed the action may be dismissed. *Id.*; *Louisiana Power & Light Co. v. Ursin*, 334 So.2d 559, 560 (La. Ct. App. 1976).

■ Plaintiffs claim that even if a procedural capacity defect existed at the time of the April hearing, they cured such deficiencies and amended their petition to reflect the new facts supporting procedural capacity. They assert that on May 7, 2015, a properly noticed meeting of members of Bourbon Investments including Mr. Conwill, Mr. White, and Mr. Rodrigue was held. During that meeting, a formal motion was made to adopt a resolution that would ratify all actions in the litigation including the original petition, approve continued prosecution against Defendants, and provide Mr. Conwill and Mr. White the authority to continue to supervise and manage litigation on behalf of Bourbon Investments and 209 Realty. Mr. Conwill and Mr. White voted in favor of the resolution, while Mr. Rodrigue voted against it.

We find these actions insufficient to cure the procedural defects in this case. La. R.S. 12:1318(A) states: "Unless otherwise provided in the articles of organization or a written operating agreement, each member of a limited liability company shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of the members."

As previously determined, at the time the ratification meeting was held the LLCs had five voting members. Only three of these members were given proper notice of the meeting, and only two of the members present voted in favor of the resolution. Therefore, a majority of the members did not vote to approve the resolution as required by LLC law, resulting in the resolution failing.

The failure of the resolution precludes any cure that may have been possible to remedy Plaintiffs lack of procedural capacity. As such, we affirm the trial court's judgment granting the exception of lack of procedural capacity.

## Peremptory Exception of No Right of Action

For the reasons discussed above, the right of Plaintiffs to file the lawsuit did not exist under LLC law because Mr. Conwill and Mr. White lacked proper authority to bring the lawsuit on behalf of Bourbon Investments and 209 Realty.

The law concerning a peremptory exception of no right of action was set forth in the recent case *Alden v. Louisiana Citizens Prop. Ins. Co.*, 2016–0044 (La. App. 4 Cir. 6/29/16), 197 So.3d 312, 315:

This court reviews an appeal of an exception of no right of action de novo. *Hope v. S & J Diving, Inc.*, 08–0282, p. 4 (La.App. 4 Cir. 9/24/08), 996 So.2d 50, 53. The peremptory exception of no right of action, La. C.C.P. art. 927 A(5), raises the question of whether the plaintiff has the capacity or legal interest in judicially enforcing the right asserted. *Babineaux v. Pernie–Bailey Drilling Co.*, 261 La. 1080, 1096–98, 262 So.2d 328, 334 (1972). Moreover, "[a]n action can be brought only by a person having a real and actual interest which he asserts." La. C.C.P. art. 681.

In this case, it has been established that Plaintiffs did not have the capacity to file this suit. Therefore, we find that the trial court properly granted the exception of no right of action.

## CONCLUSION

For these reasons, we affirm the trial court's granting of the exceptions of lack of procedural capacity and no right of action and the subsequent dismissal of the case. Accordingly, we find no error in the trial court's denial of the motion for new trial.

**AFFIRMED**

BAGNERIS, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE LANDRIEU

LANDRIEU , J., CONCURS IN PART AND DISSENTS IN PART

LANDRIEU, J., CONCURS IN PART AND DISSENTS IN PART

I concur with the majority in its affirmation of that part of the trial court judg-

ment finding Mr. Rodrigue to be a member of Bourbon Investments. This factual finding is amply supported by the record. I respectfully dissent, however, from the majority's affirmation of that part of the trial court's judgment which sustained the exceptions of lack of procedural capacity and no right of action. Our differing opinions as to these exceptions rest in our interpretation of Louisiana's LLC law. There appears to be no guidance by any other court on the issue before us.

### I. Exception of Lack of Procedural Capacity

By this exception, the defendants asserted that Mr. Conwill and Mr. White lacked the legal authority to bring this action in the name of Bourbon Investments and 209 Realty. The defendants argued that according to Louisiana statutes governing limited liability companies ("LLCs"), a majority of the members of an LLC must vote to institute suit. They further argued that only two of the members of Bourbon Investments (which is the sole member of 209 Realty), namely, Mr. Conwill and Mr. White, were given the opportunity to vote and did vote to authorize this litigation. Mr. Rodrigue was not given the opportunity to vote prior to the suit being filed. Moreover, Mr. Bollinger and Mr. Simpson, who executed a written assignment of their respective interests in Bourbon Investments to Mr. Conwill and Mr. White one day prior to the suit being filed, did not vote to institute this litigation. Relying upon La. R.S. 12:1332, the defendants asserted that the assignment could not include the right to vote Mr. Bollinger's and Mr. Simpson's shares unless the unanimous written consent of all the members was obtained.[1] They argued that, because

1. La. R.S. 12:1332 provides, in pertinent part, that "[a]n assignee of an interest in a limited liability company shall not become a member or participate in the management of the limit-

ed liability company unless the other members unanimously consent in writing." As the interpretation of this statute is a key issue in

Mr. Rodrigue was not notified of the assignment nor given an opportunity to consent, Mr. Conwill and Mr. White never gained the authority to vote the shares they obtained by assignment from Mr. Bollinger and Mr. Simpson. Without that authority, Mr. Conwill and Mr. White lacked the majority necessary to approve the filing of suit on behalf of Bourbon Investments.

After hearing testimony and considering the evidence, the trial court found that Mr. Rodrigue was a member of Bourbon Investments, and that the failure to obtain Mr. Rodrigue's consent to the assignment rendered the assignment invalid insofar as the transfer of full membership rights (including the right to vote) was concerned. Therefore, the trial court concluded, Mr. Conwill and Mr. White lacked the legal capacity to authorize the filing of suit by Bourbon Investments and 209 Realty. Upon granting the exception of lack of procedural capacity, the trial court dismissed the action with prejudice.

On appeal, the plaintiffs argue that the trial court committed both factual and legal errors. First, they argue that the trial court's finding that Mr. Rodrigue was a member of Bourbon Investments is manifestly erroneous. They contend that Mr. Rodrigue never became a member entitled to vote on bringing the lawsuit because he did not satisfy the conditions precedent to his membership. Alternatively, they argue that even if Mr. Rodrigue was a member, his consent was not legally required for the assignment by Mr. Bollinger and Mr. Simpson to transfer their full membership rights to Mr. Conwill and Mr. White because the assignees were already members of the LLC. They argue that the trial court's conclusion that Mr. Rodrigue's consent was necessary is legal error resulting from an incorrect interpretation of La. R.S. 12:1332, specifically, and of the

Louisiana law governing LLCs, in general. The plaintiffs contend that under the correct interpretation of the law, Mr. Conwill and Mr. White controlled a majority of Bourbon Investments (and therefore of 209 Realty) at the time suit was filed and therefore possessed the legal capacity to institute suit on behalf of both LLCs.

I join the majority in its affirmation of the trial court's factual finding that Mr. Rodrigue was a member of Bourbon Investments. The pertinent legal question is whether the trial court erred by concluding that Mr. Conwill and Mr. White did not have the procedural capacity to authorize the filing of this lawsuit on behalf of Bourbon Investments and 209 Realty absent Mr. Rodrigue's consent. The majority affirms the trial court on this issue. I would respectfully find error and reverse.

The dilatory exception of lack of procedural capacity, provided for in Louisiana Code of Civil Procedure article 926 A(6), raises the issue of want of capacity of the plaintiff to institute and prosecute the action and/or challenges the authority of a plaintiff who appears in a purely representative capacity. *Woodard v. Upp*, 2013–0999, pp. 4–5 (La.App. 1 Cir. 2/18/14), 142 So.3d 14, 18. Procedural capacity is presumed, unless challenged by the dilatory exception. *See* La. C.C.P. art. 855. The determination of whether a party has the procedural capacity to sue or be sued involves a question of law, which is reviewed under the *de novo* standard of review to determine whether the ruling of the trial court was legally correct. 2013–0999, p. 5, 142 So.3d at 18.

In Louisiana, the general rules governing LLCs are stated in La. R.S. 12:1301, *et seq.* La. R.S. 12:1304 provides, in pertinent part, that an LLC "shall be duly organized, and its separate existence shall be-

this appeal, the statute is discussed more fully *infra.*

gin as of the time of filing of the articles of organization with the secretary of state." La. R.S. 12:1311 states:

**Management by members**

Except as otherwise provided in the articles of organization, the business of the limited liability company shall be managed by the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any member or group or class of members.

La. R.S. 12:1318 provides, in pertinent part:

**Voting rights of members**

A. Unless otherwise provided in the articles of organization or a written operating agreement, each member of a limited liability company shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of the members.

In the case before us, the defendants contend that Mr. Conwill and Mr. White lacked the legal capacity to authorize the filing of suit by Bourbon Investments because the assignment by which they acquired the interests of Mr. Simpson and Mr. Bollinger did not transfer the right to vote those interests. They contend that in order to transfer voting rights, the unanimous consent of all the members of the LLC to the assignment is necessary. They argue that because Mr. Rodrigue did not consent to the assignment, Mr. Conwill and Mr. White had the right to vote only two fifths of the membership interests, which is less than a majority.

Conversely, Mr. Conwill and Mr. White argue that Mr. Rodrigue's consent to the assignment was not necessary to confer voting rights or any other membership rights upon them because they were already members of the LLC at the time of the assignment. They contend that, although the LLC law restricts the rights of an assignee, such restrictions do not apply to assignments by members to other members of the LLC, as opposed to assignments to third parties. Therefore, Mr. Conwill and Mr. White argue that once they acquired the interests of Mr. Simpson and Mr. Bollinger, they controlled two thirds of the LLC and thus a majority of the voting rights. They therefore contend that the two of them had the authority to authorize the filing of the lawsuit without Mr. Rodrigue's vote.

Both parties' arguments are based upon two provisions of the LLC law regarding assignments, La. R.S. 12:1330 and 12:1332, which the parties (and the judges of this panel) interpret differently. These statutes provide, in pertinent part:

**§ 1330. Assignment of membership interest**

A. Unless otherwise provided in the articles of organization or an operating agreement, a membership interest shall be assignable in whole or in part. An assignment of a membership interest shall not entitle the assignee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.

B. Unless otherwise provided in the articles of organization or an operating agreement, the pledge of or granting of a security interest, lien, or other encumbrance in or against any or all of the membership interest of a member shall not cause the member to cease to be a member or to have the power to exercise any rights or powers of a member.

C. Unless otherwise provided in a written operating agreement and except to the extent assigned by agreement, until an assignee of a membership interest becomes a member, the assignee shall have no liability as a member solely as a result of such assignment.

§ 1332. **Right of assignee to become a member**

A. Except as otherwise provided in the articles of organization or a written operating agreement:

(1) An assignee of an interest in a limited liability company shall not become a member or participate in the management of the limited liability company unless the other members unanimously consent in writing.

(2) Until the assignee of an interest in a limited liability company becomes a member, the assignor shall continue to be a member.

The parties have not cited, nor are we aware, of any jurisprudence addressing the precise issue presented here. The guidelines for statutory interpretation are found in the Louisiana Civil Code. La. C.C. art. 9 provides:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.

La. C.C. art. 11provides, in pertinent part:
The words of a law must be given their generally prevailing meaning.

La. C.C. art. 13provides:
Laws on the same subject matter must be interpreted in reference to each other.

We find no ambiguity in the words of either statute at issue here. La. R.S. 12:1330 states that an assignee is not entitled **"to become or to exercise any rights or powers of a member until such time as he is admitted** in accordance with the provisions of this Chapter." (Emphasis added.) Similarly, La. R.S. 12:1332 states: **"An assignee** of an interest in a limited liability company **shall not become a member** or participate in the management of the limited liability company unless the other members unanimously consent in writing. (Emphasis added.) These provisions are harmonious, and both clearly differentiate between the (greater) rights afforded to a member of an LLC and the (lesser) rights afforded to a mere assignee. The references in both statutes to an assignee "becoming a member" would not make sense if these provisions were intended to apply to assignees who already are members.

Analogously, in *Channelside Services, LLC v. Chrysochoos Group, Inc.*, 2015-0064 (La.App. 4 Cir. 5/13/16), 194 So.3d 751, we held that a judgment creditor, who had obtained a charging order and had thereby become an assignee of the interest of a member of an LLC, was entitled to share in the profits, losses and distributions of the LLC but was not entitled to inspect the books and records of the LLC, which right is reserved to members only. *See* La. R.S. 12:1319. In that case, we noted:

According to La. R.S. 12:1330, Channelside, as an assignee of a membership interest, shall not be entitled to exercise *any* rights or powers of a member until such time as it is admitted as a member; the assignment entitles Channelside *only* to receive distributions, share in profits and losses, and to receive allocations of "income, gain, loss, deduction, credit, or similar item" to which CGI was entitled.

2015-0064, p. 16, 194 So.3d at 760-61.

In the case before us, Mr. Conwill and Mr. White were already members of Bourbon Investments at the time they became assignees of the interests of Mr. Simpson

and Mr. Bollinger. As members, Mr. Conwill and Mr. White did not need a statutory provision to confer upon them rights that they already possessed. Moreover, as they were already members, there was no need for a unanimous vote to approve their membership. Considering these circumstances, I conclude that the trial court erred as a matter of law by interpreting La. R.S. 12:1330 and 12:1332 as prohibiting Mr. Conwill and Mr. White from exercising their full membership rights with regard to the shares they received by assignment from Mr. Simpson and Mr. Bollinger. The assignment of Mr. Simpson's and Mr. Bollinger's shares to Mr. Conwill and Mr. White was valid without the consent of Mr. Rodrigue. Following the assignment, Mr. Conwill and Mr. White controlled a majority interest in both Bourbon Investments and 209 Realty, and therefore had the procedural capacity to file this lawsuit on behalf of those LLC's. I would therefore reverse the granting of the defendants' exception of lack of procedural capacity and the dismissal of the plaintiffs' claims on this basis.

## II. Exception of No Right of Action

Whether a party has a right of action is a question of law. *Weber v. Metro. Cmty. Hospice Found., Inc.*, 2013–0182, p. 4 (La. App. 4 Cir. 12/18/13), 131 So.3d 371, 374. An appellate court reviews questions of law by making a determination as to whether the trial court was legally correct or legally incorrect. *Id.*, pp. 4–5, 131 So.3d at 374.

Lack of procedural capacity is not synonymous with no right of action. *Horrell v. Horrell*, 99–1093, p. 8 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 369. The peremptory exception of no right of action, as provided for in Louisiana Code of Civil Procedure article 927(5), questions the plaintiff's standing or interest to bring suit. *Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. v. Guth*, 2015–0680, p. 10 (La.

App. 4 Cir. 5/25/16), 195 So.3d 579, 586. The pertinent inquiry is whether the plaintiff has a real and actual interest in the action, or belongs to the class of persons to whom the law grants the cause of action asserted in the lawsuit. *See, Weber, supra*, 2013–0182, p. 5, 131 So.3d 371, 374 (and cases cited therein). By contrast, the dilatory exception of lack of procedural capacity questions the legal capacity of the plaintiff to institute the action and/or challenges the authority of a plaintiff who appears in a purely representative capacity. *Woodard v. Upp, supra*, 2013–0999, pp. 4–5, 142 So.3d at 18. The record in this case demonstrates that the trial court failed to recognize the distinction between these two exceptions.

A defendant raising the exception of no right of action has the burden of proving the exception. *City of New Orleans v. Board of Directors of Louisiana State Museum*, 98–1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755. The defendants here did not introduce any evidence in support of the exception of no right of action; nor did they argue, either in the trial court or in their briefs on appeal, any legal theory in support of this exception other than the plaintiffs' alleged lack of procedural capacity. Considering the record, there is no question that Bourbon Investments and 209 Realty have standing/an interest in bringing suit for the breach of the APA and/or RPA; as parties to those agreements, they clearly are entitled to assert a cause of action alleging those agreements were breached causing damage to them. Accordingly, I conclude that the plaintiffs have a right of action, and would reverse the trial court's judgment which sustained the exception.

## CONCLUSION

Accordingly, for the reasons stated, I concur in the majority's finding that Mr. Rodrigue is a member of Bourbon Invest-

ments but respectfully dissent from that part of opinion which affirms the trial court's judgment sustaining the exceptions of lack of procedural capacity and no right of action.